**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| PAUL R. NIXON, ) | |
| ) | |
|     *Plaintiff* ) | |
| ) | |
| v. ) | Docket No. 05-193-P-S |
| ) | |
| JO ANNE B. BARNHART, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
|     *Defendant* ) | |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") appeal raises the issue whether the commissioner erred in reopening a decision fully favorable to the plaintiff and determining, upon reexamination, that he was capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

The plaintiff embarked on the long and winding road to this current appeal when, in November 1998, he filed applications for Supplemental Security Income ("SSI") and SSD benefits. *See* Record at 4, 158-60. These applications were denied initially on January 28, 1999, *see id.* at 4, 99, and on reconsideration on March 30, 1999, *see id.* at 4, 100-01. However, following a hearing held on

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on May 26, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

October 26, 1999, Administrative Law Judge Katherine Morgan issued a decision (dated April 13, 2000) fully favorable to the plaintiff, finding him to have been disabled since his amended alleged onset date of April 30, 1998. *See id*. at 72, 105-13.[2] This was not the end of the matter: By letter dated March 7, 2001 a different administrative law judge, Manuel A. Rodriguez, notified the plaintiff that a hearing would be held on March 28, 2001 to explore, *inter alia*, whether work activity in which he had engaged subsequent to being found eligible for benefits demonstrated that he had regained the ability to engage in substantial gainful activity and whether his prior applications for benefits could be reopened. *See id*. at 141, 143. The hearing was held as scheduled on March 28, 2001. *See id*. at 29.

By decision dated November 15, 2002 Judge Rodriguez (i) noted that the plaintiff had withdrawn his SSI application and (ii) reopened and revised Judge Morgan's April 13, 2000 hearing decision with respect to the award of SSD benefits. *See id*. at 20, 26-28.[3] In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), he found, in relevant part, that the plaintiff was able to (i) engage in prolonged walking, standing and sitting, (ii) lift up to ten pounds frequently and twenty pounds occasionally, (iii) use his right arm for all but vigorous, repetitive activities, and (iv) sustain attention and concentration for completion of simple, routine tasks, as a result of which he possessed the residual functional capacity ("RFC") for a wide range of light work, Finding 7, Record at 27; that, considering his RFC, age (younger individual as of his amended alleged onset date and then approaching advanced age), education (more than high school) and work history (no transferable skills) within the framework of Rules 202.13, 202.14, 202.20 and 202.21 of Table 2, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), jobs existed in significant numbers in the national economy

---

[2] Inasmuch as the plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through at least December 31, 2003, *see* Finding 1, Record at 111, Judge Morgan had no need to undertake a separate SSD analysis.

[3] Counsel for the plaintiff confirmed at oral argument that, as stated by Judge Rodriguez, the plaintiff withdrew his application for SSI *(continued on next page)*

that he could perform, Findings 9-12, *id.*; and that he therefore had not been under a disability at any time through the date of decision, Finding 13, *id.*

By letter dated December 2, 2002 the plaintiff requested review of Judge Rodriguez's unfavorable decision. *See id.* at 16. Nearly three years later, by notice dated August 12, 2005, the Appeals Council granted that request. *See id.* at 345-47. By decision dated September 26, 2005, the Appeals Council determined that (i) new information revealed that the plaintiff's RFC was reduced to a sedentary level as of April 4, 2002, (ii) for the period from April 4, 2002 through August 21, 2002 (the day before his 50th birthday), Rule 201.21 of Table 1 of the Grid directed a conclusion that he was not disabled, (iii) for the period beginning on August 22, 2002 (his 50th birthday), Rule 201.14 of Table 1 of the Grid directed a conclusion that he was disabled, and (iv) for the period prior to April 4, 2002, he was not disabled for the reasons stated by Judge Rodriguez. *See id.* at 11-13. The Appeals Council's decision became the final decision of the commissioner. 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The plaintiff now complains that Judge Rodriguez (i) erred in reopening Judge Morgan's fully favorable decision inasmuch as only a claimant, not the commissioner, can reopen a decision at that point, (ii) provided inadequate notice of the issues to be aired during the second (March 28, 2001) hearing, and (iii) improperly relied for his Step 5 finding of non-disability solely on the Grid. *See generally* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 8).[4]

---

benefits. Thus, the instant appeal concerns only SSD benefits.

[4] Judge Rodriguez reopened Judge Morgan's decision "for good cause" on the basis of the existence of "new and material evidence" reflecting the plaintiff's work activity and earnings. *See* Record at 20; *see also* 20 C.F.R. §§ 404.988(b), 404.989(a)(1). At oral argument, counsel for the plaintiff contended that Judge Rodriguez erred in determining that the plaintiff's work activity constituted "new and material evidence" (and hence provided "good cause" for reopening). Counsel for the commissioner objected, asserting that this point, the merits of which he did not address, had not been raised in the Statement of Errors. Counsel for the plaintiff rejoined that the point was adequately raised; however, I agree with counsel for the commissioner that it was not. For the proposition that the issue was sufficiently raised, counsel for the plaintiff pointed to a passage in the introductory portion of his brief in which, in providing an overview of his second of three points of error, he stated: "[T]he claimant's work activity subsequent to the earlier decision did not preclude disability benefits; this was the reason given for the reopening. Therefore, the medical and disability issues should not have been
*(continued on next page)*

The plaintiff's first two points of error present questions of law that this court reviews *de novo*. *See, e.g., Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). With respect to his third point, the standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

Judge Rodriguez reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

For the reasons that follow, I conclude that Judge Rodriguez properly reopened Judge Morgan's decision and provided adequate notice of the issues to be considered at the March 28, 2001 hearing. However, I agree with the plaintiff that he erred in relying solely on the Grid to reach his Step 5 finding. Reversal and remand to correct that error are warranted.

---

revisited, and were not properly noticed." Statement of Errors at 2. However, in the extended discussion that followed, tellingly titled "The notice was inadequate[,]" he glaringly omitted any mention of lack of good cause for reopening. *See id*. at 3; *see also, e.g., Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted). In *Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006), I warned: "Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court." *Farrin*, 2006 WL 549376, at *5 (footnote omitted). That day has come. The objection of the commissioner's counsel is sustained, and the plaintiff's belatedly developed argument regarding lack of good cause for reopening deemed waived.

**I. Discussion**

**A. Reopening of Prior Decision**

As a threshold matter, the plaintiff contends that Judge Rodriguez erred in reopening Judge Morgan's fully favorable decision inasmuch as the commissioner has no power to reopen a decision pursuant to the regulatory four-year reopening period absent a claimant's request that she do so. *See* Statement of Errors at 2-3. For this proposition he cites *McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161 (1st Cir. 1987). *See id.* The First Circuit in *McCuin* did indeed construe the commissioner's then-regulations to permit only a claimant – not the commissioner – to initiate the reopening of a decision pursuant to 20 C.F.R. §§ 404.987-89. *See McCuin*, 817 F.2d at 167-75. Critically, the First Circuit construed regulatory language that then provided, *inter alia*: "(b) *Procedure for reopening and revision*. You may ask that a determination or a decision to which you were a party be revised. The conditions under which we will reopen a previous determination or decision are explained in § 404.988." *Id*. at 169 (quoting 20 C.F.R. § 404.987(b)). The First Circuit held: "In view of the serious substantive and procedural due process problems that would result from the Secretary's reading of the regulations [permitting not only a claimant but also the commissioner to initiate reopening of a decision], we conclude that they should be interpreted as allowing reopening only on the basis of motions by claimants." *Id*. at 174.

On October 27, 1988, consistent with *McCuin*, the commissioner published an acquiescence ruling directing that, with respect to cases in which claimants resided in Maine, Massachusetts, New Hampshire, Rhode Island or, for title II only, in Puerto Rico at the time of an administrative law judge decision, the Appeals Council could not reopen and revise a decision on its own initiative. *See* Social Security Acquiescence Ruling 88-5(1), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("AR 88-5(1)"), at 944-47. However, the commissioner noted, in relevant part:

5

> SSA has interpreted the reopening regulations (20 C.F.R. Sections 404.987 and 416.1487) to allow for reopening of ALJ decisions on the motion of a claimant or on the Appeals Council's own initiative.
>
> \*\*\*
>
> The holding in McCuin bars the Appeals Council from reopening and revising ALJ decisions on its own initiative under 20 C.F.R. Sections 404.987, 404.988, 416.1487 and 416.1488.
>
> \*\*\*
>
> SSA intends to clarify the reopening regulations at issue in this case through the rulemaking process. SSA will continue to apply this Ruling until such clarification is made.

*Id*. at 946-47.

True to its word, the Social Security Administration in 1994 revised the regulations in issue "to clarify that we may reopen and revise a final determination or decision either on our own initiative or upon the request of a person who was a party to the determination or decision." Reopening Determinations and Decisions, 59 Fed. Reg. 8532, 8534 (Feb. 23, 1994). Section 404.987, for example, was revised to state: "(b) *Procedure for reopening and revision*. We may reopen a final determination or decision on our own initiative, or you may ask that a final determination or a decision to which you were a party be reopened. In either instance, if we reopen the determination or decision, we may revise that determination or decision. The conditions under which we may reopen a previous determination or decision, either on our own initiative or at your request, are explained in § 404.988." 20 C.F.R. § 404.987(b).[5] The commissioner thereupon rescinded AR 88-5(1), observing: "[S]ince the regulation that was the subject of the McCuin decision has now been revised, we are rescinding the McCuin AR concurrently with the publication of the revised regulations. Adjudicators of claims arising in the First Circuit (Maine, Massachusetts, New Hampshire, Rhode Island or Puerto Rico) will

---

[5] A parallel change was made to SSI-related regulations. *See* 20 C.F.R. § 416.1487(b). No change has since been made to sections *(continued on next page)*

6

no longer follow the AR, but will decide cases in accordance with the revised regulations on reopening[.]" Rescission of Social Security Acquiescence, 59 Fed. Reg. 8650, 8650 (Feb. 23, 1994).

The plaintiff suggests that *McCuin* continues to bar the commissioner from reopening decisions on her own motion pursuant to the revised regulations because *McCuin* was predicated on serious substantive and procedural due-process concerns. *See* Statement of Errors at 2-3. Nonetheless, in my view, in rescinding AR 88-5(1) the commissioner got it right: *McCuin* simply cannot be stretched so far as to cover (and dictate the striking down of) the revised regulations. The *McCuin* court's concerns stemmed, in good measure, from its observation that neither the then-operative regulations nor the language of notices then issued to victorious claimants apprised them of the distinct possibility that, anytime within the ensuing four years, their victory might be snatched from them upon reopening by the commissioner. *See McCuin*, 817 F.2d at 171-75. However, since the 1994 revision, the regulations have made crystal-clear to claimants not only that the commissioner possesses this power but also in exactly which sets of circumstances she may choose to exercise it. *See* 20 C.F.R. §§ 404.987-89, 416.1487-89. Since that time, claimants in the plaintiff's shoes cannot fairly be said to have been blindsided – the chief evil decried in *McCuin*.

In summary, Judge Rodriguez reopened Judge Morgan's decision in accordance with authority expressly granted by regulations the constitutional validity of which, in my view, is not called into question by *McCuin*.

### B.  Propriety of Hearing Notice

I turn next to the plaintiff's second point of error: that he received woefully inadequate notice of the nature of the issues to be aired at his hearing. *See* Statement of Errors at 3; *see also, e.g., Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970) ("The fundamental requisite of due process of law is

---

404.987 or 416.1487.

the opportunity to be heard. . . .  In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination [of benefits], and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.") (citations and internal quotation marks omitted).  This point is patently meritless.  The plaintiff contends:

> The issue in the notice was whether an established disability might have ended.  It was beyond the scope of the notice to evaluate the case with a possibility of finding that the disability never commenced at all, rather than merely ended.  As a result, counsel and claimant had no idea that the ALJ intended to pursue a determination of initial disability, until his decision a year and a half after the hearing.

Statement of Errors at 3.  Nonetheless, Judge Rodriguez's notice of hearing dated March 7, 2001 not only raised the question of whether the plaintiff's disability may have ceased but also stated: "A second issue to be determined is whether your prior application for Title XVI and Title II benefits can be reopened."  *Id*. at 143.  The notice added, in relevant part: "If you qualify for benefits based on disability, I will also decide if your disability continues."  *Id*.  These statements provided sufficient notice that Judge Rodriguez might delve beyond the issue of cessation of disability and revisit the question whether the plaintiff properly was found disabled in the first place.

### C.  Reliance on Grid

I turn to the plaintiff's final point of error: that the administrative law judge erred in relying solely on the Grid in the absence of any analysis (or evidence) that the plaintiff remained able to perform a "wide range" of light work despite his nonexertional impairments.  *See* Statement of Errors at 3-6.  The plaintiff is correct.

Use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983).  When a claimant's impairments involve only limitations related to the exertional requirements of work, the

8

Grid provides a "streamlined" method by which the commissioner can meet her burden of showing there is other work a claimant can perform. *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991). However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she can do. *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).[6] Whether the commissioner may rely on the Grid in these circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional impairment is significant, the commissioner generally may not rely on the Grid to meet her Step 5 burden but must employ other means, typically use of a vocational expert. *See, e.g., id.*

Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment . . . has the effect only of reducing that occupational base marginally[.]" *Id*. This is true of mental as well as physical impairments. *See, e.g., id.* at 525-28. "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey*, 276 F.3d at 7 (citation and internal quotation marks omitted).

Although, in this case, Judge Rodriguez suggested that he used the Grid as a "framework," Finding 12, Record at 27, as counsel for the commissioner conceded at oral argument, he relied solely on the Grid to reach his Step 5 finding of non-disability. A vocational expert was present at the

---

[6] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-9p"), at 156. "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional." *Id*. "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, *(continued on next page)*

plaintiff's March 28, 2001 hearing; however, Judge Rodriguez did not posit to her a hypothetical question containing the RFC he ultimately found the plaintiff to possess. *Compare* Finding 7, *id*. *with id*. at 64-71. Nor did he inquire regarding the degree to which the plaintiff's nonexertional impairments (ability to use his right arm for all but vigorous, repetitive activities and ability to sustain attention and concentration for completion of simple, routine tasks), *see* Finding 7, *id*. at 27, would erode the range of light work otherwise available to the plaintiff, *see id*. at 64-71. In his decision he stated, without citation to evidence or authority, that the plaintiff retained the RFC "for a wide range of light work activity." *Id*. at 24.

This yet may have been harmless error to the extent this proposition was self-evident. With respect to the plaintiff's limitation to simple, routine tasks, that seemingly is the case. Judge Rodriguez relied on Grid rules that presume the existence of no transferable skills. *See* Finding 12, *id*. at 27; Rules 202.13, 202.14, 202.20 & 202.21 of Table 2 to Grid. As a general proposition, the mental capabilities required to perform "competitive, remunerative, unskilled work" are (i) "[u]nderstanding, remembering, and carrying out simple instructions[,]" (ii) "[m]aking judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions[,]" (iii) [r]esponding appropriately to supervision, co-workers and usual work situations," and (iv) "[d]ealing with changes in a routine work setting." SSR 96-9p, at 160-61. Judge Rodriguez noted no restriction in any of those capabilities. *See* Finding 7, Record at 27.[7]

---

balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." *Id*.

[7] As the plaintiff points out, *see* Statement of Errors at 4-5, this court has held that a limitation to simple, repetitive tasks precludes performance of jobs listed in the Dictionary of Occupational Titles as having a general education development ("GED") reasoning level of 3 or 4, *see, e.g., Carter v. Barnhart*, No. 05-38-B-W, slip op. at 3-4 (D. Me. Nov. 30, 2005) (rec. dec., *aff'd* Dec. 19, 2005). However, *Carter*, which did not concern the supportability of sole reliance on the Grid, does not stand for the proposition that such a limitation constitutes a significant nonexertional impairment for Grid purposes.

However, with respect to the plaintiff's right-arm restriction, the question is much closer. In at least one ruling, the commissioner has addressed the impact of nonexertional impairments on light work, stating:

> The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday. Another important difference is that the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist. Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects. Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.

Social Security Ruling 83-14, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 83-14"), at 46. Ruling 83-14 provides examples of nonexertional restrictions that have "very little or no effect on the unskilled light occupational base"; however, restrictions on repetitive use of an upper extremity are not among them. *See id*.

At oral argument, counsel for the commissioner cited a handful of cases for the proposition that upper-extremity restrictions such as the plaintiff's do not preclude reliance on the Grid; however, each of those cases is distinguishable. Three involve ability to perform sedentary – not light – work. *See Falcon-Cartagena v. Commissioner of Soc. Sec.*, 21 Fed. Appx. 11, 13-14 (1st Cir. 2001); *Rogers v. Barnhart*, 204 F. Supp.2d 885, 890, 896 (W.D.N.C. 2002); *Gillespie v. Chater*, No. 94 C 6583, 1996 WL 10910, at *8-*9 (N.D. Ill. Jan. 9, 1996). One case involves light work but implicates fine-motor skills, not restrictions on amount of usage of the arm generally. *See Martone v. Apfel*, 70 F. Supp.2d 145, 154 (N.D.N.Y. 1999). The final case – a decision of this court – does not involve analysis of application of the Grid. *See Carson v. Barnhart*, 242 F. Supp.2d 33, 38 (D. Me. 2002). Moreover, to the extent the reasoning of either *Falcon-Cartagena* or *Carson* can be said to apply in this context,

11

both involve materially different sorts of upper-extremity restrictions.  In *Falcon-Cartagena*, the plaintiff was precluded from tasks requiring constant overhead reaching with the left arm, *see Falcon-Cartagena*, 21 Fed. Appx. at 14; in *Carson*, the plaintiff argued that the administrative law judge had erred in omitting to find that he suffered limitations on constant overhead reaching or constant grasping with the left hand, *see Carson*, 242 F. Supp.2d at 38.  Here, from all that appears, Judge Rodriguez found the plaintiff precluded from using his right arm in any manner requiring vigorous, repetitive usage.  The limitation found by Judge Rodriguez thus implicates some of the capacities identified in relevant regulations and Social Security rulings as entailed in the performance of light work.  *See, e.g.*, 20 C.F.R. § 404.1567(b) ("[A] job is in [the light-work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."); SSR 83-14, at 46 ("Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers.  Rather, they require gross use of the hands to grasp, hold, and turn objects.").

The burden of proof at Step 5 rests on the commissioner.  In the absence of evidence or any persuasive authority (*e.g.*, a Social Security ruling) demonstrating that an upper-extremity restriction such as the plaintiff's has the effect of reducing the RFC for the full range of light work only marginally, the commissioner's decision cannot stand.  *See, e.g., Wadford v. Chater*, No. 95-7147, 1996 WL 421988, at *1 (10th Cir. July 26, 1996) ("[T]he claimant does not bear the burden to prove that his right hand weakness substantially diminishes his capacity for a full range of light work on a sustained basis; instead, the Secretary shoulders the burden of showing that the weakness does *not* substantially diminish it.") (citation and internal punctuation omitted) (emphasis in original). [8]

---

[8] At oral argument, I questioned whether, in view of the Appeals Council's partial reversal of Judge Rodriguez's decision, this point of
*(continued on next page)*

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 1st day of June, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

error implicated only the plaintiff's request for SSD benefits for the period prior to April 4, 2002. *See* Record at 12. The plaintiff's counsel suggested that it implicated the entire period prior to the plaintiff's 50th birthday (on August 22, 2002) because the Appeals Council simply relied on Judge Rodriguez's ruling for the period from April 4-August 21, 2002, continuing to find the plaintiff disabled per the Grid without even citing a different Grid rule. However, for that discrete period (April 4-August 21, 2002), the Appeals Council found both a different RFC (for sedentary work) and relied on a different Grid rule (Rule 201.21 of Table 1 of the Grid) than had Judge Rodriguez. *Compare* Record at 12 *with* Findings 7 & 12, *id*. at 27. The Statement of Errors cannot fairly be said to challenge the Appeals Council's findings for the period from April 4-August 22, 2002. *See* Statement of Errors at 3-6. Hence, if the court concurs that reversal and remand are necessary, I recommend that those remedies be limited solely to the plaintiff's request for SSD benefits for the period prior to April 4, 2002.